# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

LPI, INC.,          )
          )
     *Plaintiff,*   )
          )   Case No. 3:24-cv-275
v.          )
          )   Judge Atchley
AXLE LOGISTICS, LLC &   )
Z EXCHANGE, LLC,   )   Magistrate Judge McCook
          )
     *Defendants.*   )
          )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff LPI, Inc.'s ("LPI") Motion to Dismiss [Doc. 17]. LPI moves to dismiss Defendant Axle Logistics, LLC's ("Axle") counterclaims based on a contractual time limitation provision and for lack of subject matter jurisdiction. For the reasons explained below, LPI's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND

Plaintiff LPI, Inc. manufactures and sells hot tubs. [Doc. 1 at ¶ 7]. In June 2022, LPI engaged Defendant Axle Logistics, LLC—a logistics services company and transportation broker—to deliver a shipment of hot tubs to Kalispell, Montana. [*Id.* at ¶ 8; Doc. 8 at ¶ 1(a)].[1] LPI alleges that Axle, in its capacity as a broker, arranged for Defendant Z Exchange, LLC to transport the shipment of hot tubs to Kalispell, Montana. [Doc. 1 at ¶ 11]. During transport, Z Exchange's truck was involved in a single-car accident, and the shipment of hot tubs suffered heavy damage. [*Id.* at ¶ 14]. The shipment was never delivered to its Montana destination. [*Id.* at ¶ 19].

---

[1] Axle's responsive pleading includes both its answer and counterclaim. Because Axle restarted the paragraph numbering for its counterclaim, there are duplicate paragraph numbers in the responsive pleading. [Doc. 8]. For clarity and ease of reference, the Court will denote paragraphs in Axle's counterclaim by adding an "(a)" next to the paragraph number, as set forth above.

LPI filed this lawsuit against Axle and Z Exchange on June 24, 2024. [Doc. 1]. In its complaint, LPI asserts a claim for breach of contract against Axle and a claim under the Carmack Amendment against both Axle and Z Exchange. [*Id.* at ¶ 21–41]. Axle answered the complaint and asserted counterclaims for nine unpaid invoices. [Doc. 8 at ¶ 8(a)–15(a)]. One of those invoices stems from the Montana shipment in June 2022, but the remaining invoices relate to other transactions. [*Id.*].

LPI seeks dismissal of Axle's counterclaims for the unpaid invoices. LPI advances two arguments in support of dismissal. First, with respect to the invoice for the Montana shipment, LPI contends that Axle failed to assert a claim within the two-year limitation period included in the parties' contract. [Doc. 18 at 3]. Second, for the remaining eight invoices, LPI argues that the Court lacks subject matter jurisdiction. [*Id.* at 5]. LPI's motion is ripe for the Court's review.

## II.    STANDARD OF REVIEW

When ruling on a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts evaluate motions to dismiss counterclaims "under the same standard as a motion to dismiss a complaint." *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 367 (W.D.N.Y. 2018) (citation omitted). Thus, the Court must accept a counterclaim's allegations as true. *Id.*

2

## III.    ANALYSIS

LPI asserts that one of Axle's unpaid invoice counterclaims is time-barred under the parties' contract and that the remaining eight invoices fail to confer subject matter jurisdiction. For the following reasons, the Court concludes that the parties' contract does not render the counterclaim under the one invoice untimely, but the counterclaims for the other eight invoices must be dismissed for lack of subject matter jurisdiction.

### A.    Contract Time Limitation

The parties' contract provides that if LPI fails to pay an invoice, Axle "may commence a civil action to recover such invoiced amounts within 24 months of delivery or tender of delivery of the shipments involved." [Doc. 28-1 at ¶ 4(C)]. LPI argues that "tender of delivery" refers to when it provided its goods to Axle or the interstate carrier (in this case, Z Exchange) for delivery. [Doc. 32 at 2]. Because it tendered the hot tubs bound for Montana on June 14, 2022, LPI contends that the contract required Axle to file a claim by June 14, 2024. [Doc. 18 at 4]. This reading would render Axle's July 12, 2024, counterclaim untimely. [Doc. 8].

Axle takes a different view. It argues that "tender of delivery" refers to when the interstate carrier tenders, or offers, delivery to the ultimate purchaser. [Doc. 28 at 3]. The shipment of hot tubs never made its way to the purchaser in Montana following the accident, so Axle suggests that there was no "delivery or tender of delivery," meaning the contract's two-year time limitation never commenced. [*Id.* at 3–4].

These arguments raise questions of contract interpretation. "Interpretation of contracts is a question of law." *Pylant v. Spivey*, 174 S.W.3d 143, 150 (Tenn. Ct. App. 2003). When interpreting contracts, a court's role "is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used." *Id.* at 151. "The literal meaning of the contract

3

language controls if the language is clear and unambiguous." *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). If contract language is ambiguous, or "susceptible to more than one reasonable interpretation," however, courts must resort to rules of construction to ascertain the parties' intent. *Id.* (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). Competing interpretations will render a contractual provision ambiguous only "when both of the interpretations advanced are reasonable." *Fisher v. Revell*, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009) (citation omitted). And courts should consider the contract as a whole before readily characterizing a particular provision as ambiguous. *Id.*; *Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 789 (M.D. Tenn. 2022).

When considering the contract as a whole, the Court concludes that Axle's interpretation is the correct one. That is, "tender of delivery" refers to when the interstate carrier tenders delivery to the buyer, not when LPI tenders goods to Axle or the interstate carrier for delivery. Because the June 2022 shipment was never presented to the Montana buyer, the contract's two-year limitation provision was never triggered, and Axle's counterclaim is not time-barred.

Multiple aspects of the parties' contract leads the Court to this conclusion. Start with how the contract uses "delivery" in other provisions. The contract includes the term "delivery" in Paragraphs 6(D), 8(G), and 8(H). In each of those provisions, "delivery" clearly refers to the point in time when the interstate carrier passes the goods off to the buyer. Paragraph 6(D) provides that LPI must file claims against interstate carriers "within 9 months of the date of delivery of Goods, or in the case of non-delivery, within 9 months of the date delivery should have been made." [Doc. 28-1 at ¶ 6(D)]. This provision contemplates that the interstate carrier may or may not complete "delivery" to the buyer, so it ties LPI's time to file a claim against the interstate carrier to when it should have completed delivery to the buyer.

Paragraph 8(G) is even more explicit. That provision allows the interstate carrier to take the temperature of food shipments "upon delivery at destination." [*Id.* at ¶ 8(G)]. The intended destination for the June 2022 shipment, of course, was Kalispell, Montana. And the contract's use of "upon delivery at destination" suggests that "delivery" refers to when a shipment reaches its final destination at the buyer's place of business. Paragraph 8(H) bolsters this conclusion. It directs that LPI, in the event of apparent adulteration of a food shipment, must retain an expert to inspect the shipment "after delivery." [*Id.* at ¶ 8(H)]. The provision further provides that the interstate carrier bears no liability for shipments "wrongfully refused" if LPI fails to arrange a timely expert inspection. [*Id.*]. Like the other provisions, Paragraph 8(H) situates "delivery" for when a shipment is presented to the buyer. The provision covers situations where a shipment adulterates in transit, and the seller, such as LPI, must arrange for a timely expert inspection "after delivery" to determine whether the buyer can rightfully refuse the shipment. [*Id.*]. If "delivery" in Paragraphs 6(D), 8(G), and 8(H) refers to when goods are delivered to the buyer, then "tender *of delivery*" refers to when goods are tendered, or offered, to the buyer for delivery.

Axle's role under the contract lends additional support to this interpretation. Recall that Axle is a transportation broker. The contract clarifies that Axle's role is "to arrange for the transportation of Goods by Carriers." [*Id.* at ¶ 1]. Consistent with that role, Axle allegedly arranged for Z Exchange to transport LPI's hot tubs to Montana. [Doc. 1 at ¶ 11]. LPI interprets "tender of delivery" to refer to when "the goods at issue were provided to Axle Logistics and/or carrier for delivery." [Doc. 32 at 2–3]. This interpretation does not comport with Axle's role under the contract and undermines the contract's two-year limitation provision.

To "tender" something is to offer something. It would be odd to tie Axle's time to sue LPI for unpaid invoices to the time when Axle was "tendered," or offered, the goods for delivery. All

5

tenders and offers can presumably be rejected. Considering that Axle's role under the contract is to "arrange for the transportation of Goods by Carriers," how could Axle send an invoice to LPI after rejecting LPI's tender of goods for delivery? If Axle rejects a tender of LPI, then no goods will be transported, and Axle will not have "arranged" for their delivery and satisfied its contractual obligation. Meanwhile, under Axle's interpretation, its time to sue LPI for unpaid invoices begins to run when the interstate carrier tenders goods to the buyer. This reading makes sense. Even if the buyer rejects the tender, Axle will still have "arranged" for the shipment's transportation. After all, it would have arrived at its intended destination, and the buyer's rejection of the shipment would not change the fact that Axle successfully "arranged" for an interstate carrier to transport the shipment to the buyer. In that case, Axle would have two years from the time of the buyer's rejection to file a claim for the unpaid invoice.

LPI advances multiple counterarguments to challenge this interpretation, but none of them prove persuasive. First, LPI argues that Axle's interpretation of "tender of delivery" renders it indistinguishable from "delivery." [Doc. 32 at 2 n.2]. Under Axle's interpretation, "tender of delivery" occurs when the interstate carrier offers the shipment to the buyer. This interpretation, LPI posits, is problematic because it dictates that "tender of delivery" and "delivery" occur at the same time—that is, "when the goods are ultimately delivered." [*Id.* at 1]. The Court does not see how this poses any problems. "Tender of delivery" and "delivery," while separate events, often do occur in rapid succession. When tendered, or offered, with a satisfactory shipment, a buyer would naturally accept the shipment right away, resulting in a completed "delivery."

LPI also contends that the contract's use of "tender" in other provisions supports its interpretation of "tender of delivery." It points to three other uses of "tender," specifically in the preamble and in Paragraphs 8(B) and 8(G). [Doc. 32 at 2]. The preamble notes that LPI agrees to

follow the contract's terms "[b]y tendering Goods to Axle." [Doc. 28 at 1]. Paragraph 8(B) provides that LPI "must not tender any restricted commodities" without "making necessary prior arrangements for transportation." [*Id.* at ¶ 8(B)]. And Paragraph 8(G) requires LPI to allow the interstate carrier to confirm any food shipment's temperature "prior to acceptance of tender." [*Id.* at ¶ 8(G)]. These provisions, to be sure, reveal that LPI can "tender" goods to Axle and the interstate carrier. That Axle and the interstate carrier can accept a tender, however, does not mean that the buyer cannot also accept a tender. Multiple tenders can occur over the course of a transaction. And, as discussed above, the disputed term is "tender *of delivery*," and whenever "delivery" is used elsewhere in the contract, it refers to when the shipment is provided to the buyer. None of the "tender" provisions on which LPI relies use "tender" in conjunction with "delivery" as the two-year limitation provision does. When read in its entirety, the contract dictates that "tender of delivery" be construed to mean when the shipment is offered to the buyer.[2]

Ultimately, LPI's interpretation might prevail if the contract required Axle to file a claim within two years of the shipments being "tendered to the interstate carrier for delivery." But that's not what the contract says. Instead, the contract requires Axle to file a claim within two years of "tender of delivery of the shipments involved." [Doc. 28-1 at ¶ 4(C)]. Throughout the contract, "delivery" connotes the time when goods are delivered to the buyer, so "tender *of delivery*" necessarily refers to the time when goods are tendered, or offered, to the buyer for delivery. The June 2022 shipment of hot tubs was never tendered to the buyer in Kalispell, Montana, so Axle's counterclaim is not time-barred under the contract's two-year limitation provision.

---

[2] Because the shipment of hot tubs was never delivered or tendered to the buyer, LPI emphasizes that under Axle's interpretation, its claim for the unpaid invoice could never be time-barred. [Doc. 32 at 1–2]. Even if that is true under the terms of the contract, Tennessee's general six-year statute of limitations on breach of contract claims would still operate to impose a time limit on Axle's ability to assert a claim. *Benz-Elliott v. Barrett Ents., LP*, 456 S.W.3d 140, 152 (Tenn. 2015).

7

### B. Subject Matter Jurisdiction

The invoice for the June 2022 shipment is not the only invoice LPI allegedly failed to pay. Axle also claims that LPI failed to pay eight other invoices. [Doc. Doc. 8 at ¶ 9(a)–15(a)]. The parties agree that these eight invoices do not stem from the June 2022 shipment to Kalispell, Montana. [Doc. 18 at 7; Doc. 28 at 5]. Because the eight invoices stem from different transactions, LPI argues that the Court lacks subject matter jurisdiction over the counterclaims associated with those invoices. For the reasons explained below, the Court agrees and will dismiss these counterclaims for lack of subject matter jurisdiction.

Federal courts are courts of limited jurisdiction. Indeed, there are only two ways most cases make it into federal court: through diversity jurisdiction or federal question jurisdiction. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437–38 (2019). Two things must be true for a federal court to have diversity jurisdiction. First, there must be complete diversity between the parties, meaning that "no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). Second, the amount in controversy must exceed $75,000. *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010). Federal question jurisdiction, on the other hand, "exists when the cause of action arises under federal law." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020).

The eight invoices at issue fail to confer diversity or federal question jurisdiction. LPI and Axle are both Tennessee companies, so there is not complete diversity between the parties. [Doc. 8 at ¶ 1(a)–2(a)]. Axle's counterclaims under the eight invoices also sound in state contract law, meaning there is no federal cause of action and no federal question jurisdiction. That leaves one way for the Court to assert subject matter jurisdiction and adjudicate these counterclaims: supplemental jurisdiction.

Supplemental jurisdiction permits federal courts to adjudicate a claim even when that claim fails to provide an independent basis for subject matter jurisdiction. For a federal court to have supplemental jurisdiction over a claim, the claim must "arise out of the same common nucleus of operative fact as the federal claim." *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 187 (6th Cir. 1992). LPI's federal claim is under the Carmack Amendment and relates to the June 2022 shipment of hot tubs to Kalispell, Montana. [Doc. 1 at ¶ 28–41]. Thus, for the Court to have supplemental jurisdiction over Axle's counterclaims under the eight invoices, those counterclaims must share a common nucleus of operative fact with LPI's Carmack Amendment claim.

The Court concludes that Axle's counterclaims under the eight invoices do not share a common nucleus of operative fact with LPI's federal claim. "Where the Supreme Court has found 'a common nucleus of operative fact,' the factual connection between the state and federal claims most often involves the same incident." *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021). That is not the case here. Even Axle admits that the eight invoices "do not arise out of the specific facts as alleged in LPI's Complaint." [Doc. 28 at 5]. LPI's federal claim pertains to the June 2022 shipment to Kalispell, Montana, while the counterclaims under the eight invoices involve different shipments. [Docs. 8-4, 8-5, 8-6, 8-7, 8-8, 8-9, 8-10, 8-11].

These shipments for the eight invoices occurred at different times, involved different buyers, and presumably used different interstate carriers. [*Id.*]. The distinctiveness of these shipments confirms that they are not part of "the same incident" and do not share a common nucleus of operative fact with LPI's federal claim, which relates solely to the June 2022 shipment. *Farmer v. Whaley's Auto Repair & Towing, Inc.*, No. 2:22-cv-2809, 2023 WL 11830118, at *3 (W.D. Tenn. Mar. 16, 2023) (finding no common nucleus of operative fact where the federal and state claims were "separate incidents that happened at different times"); *see also Carter v. Davis*,

No. 2:20-cv-2358, 2021 WL 12319641, at *4 (W.D. Tenn. Nov. 2, 2021) (finding no common nucleus of operative fact between "two separate auto collisions occurring thirteen months apart that involve separate facts, witnesses, and evidence").

Axle challenges this conclusion. To do so, Axle points to an email where a representative of LPI states that LPI will pay all outstanding invoices once it is "paid in full for the freight claim." [Doc. 28 at 6]. This email, in Axle's view, establishes a factual connection between the June 2022 shipment and the counterclaims for the eight unpaid invoices. [*Id.*]. Specifically, Axle argues that the email demonstrates that "LPI intends to use the cargo claim as a means of setoff" for the eight unpaid invoices. [*Id.*]. Even if true, this email was not referenced or attached as an exhibit to LPI's complaint or Axle's counterclaim.

This omission looms large when considering the style of LPI's motion to dismiss for lack of subject matter jurisdiction. Challenges to subject matter jurisdiction can take two forms: facial attacks and factual attacks. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Facial attacks "challenge the sufficiency of the pleading itself" whereas factual attacks question "the factual existence of subject matter jurisdiction." *Id.* LPI's attack is a facial one; it does not challenge the truth of the counterclaims' jurisdictional allegations, as would be the case in a factual attack. To the contrary, LPI argues that even when accepted as true, the allegations in Axle's counterclaims fail to establish supplemental jurisdiction. Because LPI lodges a facial attack, the Court, like when reviewing motions to dismiss under Rule 12(b)(6), "takes the allegations of the complaint as true." *Id.* Also under that standard, the Court generally cannot consider documents outside the complaint, unless those documents "are referred to in the complaint and are central to the claims contained therein." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

10

Axle's counterclaims include no allegations relating to the email, and the email was not attached as an exhibit. The counterclaims simply allege the shipment dates, provide the invoice numbers, and attach the invoices as exhibits. [Doc. 8 at ¶ 9(a)–15(a)]. The email was sent more than a year before Axle filed its counterclaims, so it's not as if Axle lacked access to the email at the time it sought to invoke supplemental jurisdiction. [Doc. 28 at 6]. Because the email exists outside LPI's complaint and Axle's counterclaims, the Court will not consider it in assessing LPI's facial attack to supplemental jurisdiction.

Axle advances one final argument to support the exercise of supplemental jurisdiction. It contends that the Court "already has all the relevant parties before it," so hearing all claims would advance judicial economy. [*Id.*]. But the Court has already held that LPI's federal claim and Axle's counterclaims for the eight invoices share no common nucleus of operative fact, and the common nucleus of operative fact requirement serves as a "constitutional minimum" before supplemental jurisdiction may be exercised. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Without a common nucleus of operative fact, the Court lacks subject matter jurisdiction and need not assess questions of judicial efficiency. *See Kubala*, 984 F.3d at 1138–39.

## IV. CONCLUSION

For the reasons set forth above, Axle's counterclaim relating to the June 2022 shipment is not time-barred under the contract, but Axle's counterclaims for the remaining eight invoices are dismissed without prejudice for lack of subject matter jurisdiction. Accordingly, LPI's Motion to Dismiss [Doc. 17] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**